UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JONATHAN FARLEY WASHINGTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 2:09-CV-270-PRC |
| | ) | |
| DANNY SCHUMANN, *et al.*, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [DE 135], filed on April 15, 2013, by Defendants City of East Chicago Police Department, Officer Danny Schumann (in his individual capacity), Mayor Anthony Copeland (in his official capacity), and Police Chief Angelo Machuca Jr. (also in his official capacity).

**I. Procedural Background**

Plaintiff Jonathan Washington filed a Complaint in the United States District Court for the Northern District of Indiana on September 4, 2009. The District Court granted him leave to proceed in forma pauperis. Because he is in prison, the District Court also screened his Complaint pursuant to 28 U.S.C. § 1915A(b)(1), allowing him to proceed on four counts of his original Complaint. Count I is a Fourth Amendment excessive force claim brought under 28 U.S.C. § 1983. Counts II–IV each allege state law claims: Count II alleges assault and battery; Count III alleges negligence and gross negligence; and Count IV alleges negligent and intentional deprivation of rights.

Defendants filed an Answer, Affirmative Defenses, and Counterclaims on February 18, 2010. Defendants then filed a Motion for Summary Judgment on July 1, 2011, which this Court struck on July 28, 2011, for failure to comply with Local and Federal Rules. Defendants filed another Motion for Summary Judgment on August 2, 2011, along with a Statement of Material Facts as to Which

There is no Genuine Issue, a Memorandum in Support, and a Notice of Summary Judgment Motion. Washington filed his Response, a Statement of Material Uncontested Facts, and a Memorandum in Support on October 19, 2011. The Court denied that motion with leave to refile on November 17, 2011.

On April 15, 2013, Defendants again filed a motion for Summary Judgment along with a Memorandum in Support, a Statement of Material Facts as to Which There is no Genuine Issue, and a Notice of Summary Judgment Motion. Washington filed a response on May 22, 2013, where he asked the Court to consider his prior filings in opposition to summary judgment as his response to the instant Motion for Summary Judgment. The Court, *sua sponte*, granted that request on July 11, 2013.

Both parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II. Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a

matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110–111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e)

provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249–50.

### III. Material Facts

On the morning of October 25, 2007, just before 10:00 a.m., Defendant Danny Schumann—an East Chicago, Indiana police officer—spotted a red Chevy Impala parked near 145th Street and Homerlee Avenue in East Chicago, Indiana. The car matched the description of one recently reported stolen. Officer Schumann pulled up in his fully marked police cruiser, got out, and began walking toward the Chevy. As he drew nearer, he saw a man—Johnathan

4

Washington—sitting in the driver's seat. They made eye contact. Officer Schumann tried to speak with Washington, who began rummaging in the middle console of the car. Washington then gunned the accelerator and drove at Officer Schumann, ignoring his shouts to stop. Fearing for his life, Officer Schumann jumped aside and shot at Washington six times with his police-issued forty-caliber Beretta, hitting him twice. Washington crashed the Impala into a car parked in front of him, got out, and was eventually arrested. Paramedics then took him to St. Catherine Hospital in East Chicago, Indiana, where he underwent emergency surgery for his wounds.

As a result of the incident, Washington was charged with attempted murder, attempted aggravated battery, auto theft, resisting law enforcement, and attempted battery. He eventually pled guilty to the attempted battery charge and was sentenced to eight years imprisonment. The Indiana Court of Appeals affirmed his sentence.

**IV. Analysis**

Defendants seek summary judgment on all of Washington's federal and state claims.

*A. Section 1983*

Washington's § 1983 claim is that Officer Schumann violated Washington's constitutional rights when he shot him. Claims of "excessive force in an arrest, investigatory stop, or other 'seizure' of [one's] person" are analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Scott v. Edinburg*, 346 F.3d 752, 756 (7th Cir. 2003); *see also* U.S. Const. amend IV. "The officer's subjective belief or motivations are irrelevant." *Scott*, 346 F.3d at 756 (citing *Graham*, 490 U.S. at 397). What matters under the Constitution is the perspective of a reasonable officer at the scene. *Graham*, 490 U.S. at 396.

5

For deadly force to be reasonable, "the officer must have probable cause to believe that the suspect poses a threat of serious physical harm to the officer or to others." *Tennesee v. Garner*, 472 U.S. 1, 7 (1985); *Scott*, 346 F.3d at 756. And, if feasible, the officer must give some warning first. *Garner*, 472 U.S. at 7.

Washington disputes a number of issues surrounding the shooting. In his affidavit and many other places throughout his briefing and accompanying documents, Washington states that he was sitting in the car when Officer Schumann "without warning or explanation maliciously and recklessly fired multiple gunshots . . . directly at" Washington, hitting him twice. Though Washington never explicitly denies trying to run Officer Schumann down, these statements, when viewed in the light most favorable to him, imply as much. This contradicts the earlier factual Stipulation he signed as part of his state court guilty plea to the charge of attempted battery. In that Stipulation, Washington admitted that he

> gunned the accelerator of the Impala and drove it towards [Officer] Schumann and ignored [Officer] Schumann's shouts to stop. [Officer] Schumann had to jump out of the way of the Impala, and fearing for his life, [Officer] Schumann discharged his service weapon at the approaching Impala.

Def. Br., Exh. 11, p. 1. The Stipulation is hearsay but is nevertheless admissible. *See* Fed. R. Evid. 803(22). As Judge Posner, writing for the United States Court of Appeals for the Seventh Circuit, has explained, "just as an affidavit in which a witness tries to retract admissions that he made earlier in his deposition is normally given no weight in a summary judgment proceeding, . . . so a witness should not be permitted by a subsequent affidavit to retract admissions in a plea agreement." *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) (citations omitted). Washington is thus bound by his earlier statement.

The facts Washington admits in his Stipulation are sufficient to show that Officer Schumann's use of deadly force was justified. The prospect of being run over by a car would put a reasonable officer in fear of death or serious injury. *See generally Soriano v. Town of Cicero*, No. 10–3352, 2013 WL 1296780 (7th Cir. Apr. 2, 2013) (affirming summary judgment on an excessive force claim where the police shot the plaintiff after he "bump[ed]" his van into an officer trying to arrest him following a car chase). Officer Schumann's split-second decision to use deadly force to protect himself was hence reasonable and did not violate Washington's constitutional rights.

*1. Qualified Immunity*

Officer Schumann argues that he is entitled to qualified immunity from civil suit on the constitutional claims brought against him in his individual capacity. "[G]overnmental actors performing discretionary functions enjoy qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *In re Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010) (quoting *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

In determining whether a state actor is shielded from liability by qualified immunity, a court must consider "whether, taking the facts in the light most favorable to the plaintiff, the officers' conduct violated a constitutional right," and "whether the particular constitutional right was 'clearly established,' at the time of the alleged violation." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts have discretion about which of the two inquiries to address first. *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). As discussed above, Officer Schumann did not violate any of

7

Washington's clearly established constitutional rights. Officer Schumann is accordingly entitled to qualified immunity (and thus summary judgment) on the § 1983 claim.

## 2. Monell

Washington also alleges that the City of East Chicago Police Department, along with Mayor Anthony Copeland and Police Chief Angelo Machuca Jr. (in their official capacities), had an unconstitutional approach to training and supervising East Chicago police officers. The official capacity claims are practically claims against the Police Department and are governed by the municipal liability standards laid down in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). There is no *respondeat superior* liability under *Monell*; instead, municipalities are only liable "when execution of a government's policy or custom . . . inflicts the injury." *Id.* at 694. As discussed above, Washington suffered no constitutional injury, and there is consequently no liability. Summary judgment is thus also appropriate in favor of the police department, the police chief, and the mayor.

## B. The Indiana Tort Claims Act

When the federal claims are dismissed before trial, "the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). But when, as here, "it is clearly apparent how the state claim is to be decided," it is appropriate for a federal court to retain jurisdiction. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008); *Whitely v. Moravec*, 635 F.3d 308, 311 (7th Cir. 2011).

The pendent state court claims in this case are assault and battery (Count II), negligence and gross negligence (Count III), and negligent and intentional deprivation of rights (Count IV).

Defendants argue that these claims are barred due to Washington's failure to comply with the notice requirement of the Indiana Tort Claims Act (ITCA), Ind. Code § 34-13-3-1 *et seq.* That law bars claims against political subdivisions unless the plaintiff notifies the governing body of the political subdivision along with the Indiana political subdivision risk management commission within 180 days after the loss occurred. Ind. Code § 34-13-3-8.

Notice is "a procedural precedent which the plaintiff must prove and which the trial court must determine before trial." *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999) (citing *State, Indiana Dep't of Highways v. Hughes*, 575 N.E.2d 676, 677–78 (Ind. Ct. App. 1991)). The governmental entity has ninety days after a claim is filed to consider and approve or deny the claim. Ind. Code § 34-13-3-11. A would-be plaintiff may only pursue a lawsuit to the extent that the governmental agency has denied his claim. Ind. Code § 34-13-3-13.

Under the ITCA, the term "political subdivision" includes municipal corporations (e.g., police departments and cities) as well as the employees who work for them. *See Davidson*, 715 N.E.2d at 34; *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003). It also covers employees like Officer Schumann sued in their individual capacity so long as they were acting within the scope of their employment. *Chang v. Purdue Univ.*, 985 N.E.2d 35, 51 (Ind. Ct. App. 2013) (quoting *Bienz v. Bloom*, 674 N.E.2d 998, 1004 (Ind. Ct. App. 1996)). Accordingly, since all Defendants here are municipal corporations or their employees, Washington needed to give them each notice before pursuing his state law claims.

Non-compliance with the notice requirement has on occasion been excused "on theories of substantial compliance, waiver, and estoppel." *Brown v. Alexander*, 876 N.E.2d 376, 381 (Ind. Ct. App. 2007) (citing *Daugherty v. Dearborn Cnty.*, 827 N.E.2d 34, 36 (Ind. Ct. App. 2005); *City of*

9

*Tipton v. Baxter*, 593 N.E.2d 1280, 1282 (Ind. Ct. App. 1992)). But once a defendant raises the issue, "the burden shifts to the plaintiff to prove compliance." *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003).

Washington nowhere claims that he filed a Tort Claim Notice. Nor has he offered any response to Defendants' argument that his state law claims are barred for want of compliance with the ITCA. *See Daugherty*, 827 N.E.2d at 36. Summary judgment is thus appropriate as to Counts II, III, and IV of Washington's Complaint.

## V. Attorney Fees

Defendants seek an award of attorney fees and related expenses under 42 U.S.C. § 1988(b). Section 1988 gives courts discretion to award attorney fees to prevailing parties in a number of different types of cases, including ones brought under § 1983. Even though the "statute specifies the award of such fees is within the court's discretion, it is clear that prevailing defendants have a much harder row to hoe than do prevailing plaintiffs." *Roger Whitmore's Auto. Servs., Inc. v. Lake C'nty, Ill.*, 424 F.3d 659, 675 (7th Cir. 2005). The Supreme Court has explained that while a prevailing plaintiff "is to be awarded attorney fees in all but special circumstances," a prevailing defendant is not entitled to an award of fees unless a court finds that the plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 422 (1978). This standard has been consistently applied to those cases arising under § 1983. *See Hughes v. Rowe*, 449 U.S. 5, 14–15 (1980); *Roger Whitmore's Auto. Servs.*, 424 F.3d at 675. The Seventh Circuit Court of Appeals has held that a suit is frivolous when "it has no reasonable basis, whether in fact or in law." *Roger Whitmore's Auto. Servs.*, 424 F.3d at 675.

Under § 1988, a defendant is not required to show either subjective or objective bad faith on the part of the plaintiff in order to recover attorney fees. *Munson v. Milwaukee Bd. of Sch. Dirs.*, 969 F.2d 266, 269 (7th Cir. 1992). Rather, a defendant must show that a plaintiff's action is "meritless in the sense that it is groundless or without foundation." *Hughes*, 449 U.S. at 14. Accordingly, the Seventh Circuit Court of Appeals has instructed that "when a civil rights suit is lacking in any legal or factual basis . . . an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation." *Munson*, 969 F.3d at 269 (citation omitted).

That a claim does not survive summary judgment does not alone make it frivolous. *Christiansburg Garment Co.*, 434 U.S. at 421–22; *Roger Whitmore's Auto. Servs.*, 424 F.3d at 676; *Khan v. Gallitano*, 180 F.3d 829, 837 (7th Cir. 1999) ("There is a significant difference between making a weak argument with little chance of success . . . and making a frivolous argument with no chance of success."). Washington's case is more than just weak. It is founded on nothing more than Washington's refrain that Officer Schumann "without warning or explanation maliciously and recklessly filed multiple gunshots . . . directly at" Washington. As explained above, this claim runs directly contrary to his earlier Stipulation and fails as a matter of law. By bringing and persisting in this lawsuit, Washington has wasted not only his time, but the time and money of Defendants and this Court.

In light of this, the Court finds that Washington's claims are frivolous, unreasonable, groundless, meritless, without foundation, and have no reasonable basis in law or fact. Accordingly, the Court grants the Defendants' request for an award of reasonable attorney fees under section § 1988.

## VI. CONCLUSION

For these reasons, the Court hereby **GRANTS** the Motion for Summary Judgment [DE 135], granting summary judgment on all claims in favor of City of East Chicago Police Department, Officer Danny Schumann (in his individual capacity), Mayor Anthony Copeland (in his official capacity), and Police Chief Angelo Machuca Jr. (also in his official capacity). The Court also hereby **GRANTS** Defendants' request for attorney fees under 42 U.S.C § 1988. Defendants shall file with the Court, a detailed itemization of legal services rendered and reasonable attorney fees charged by their attorneys by October 21, 2013.

All that remains of this case are Defendants' counterclaims for attorney fees under Ind. Code §§ 34-13-3-21 and 34-13-4-4, which will be the subject of a status hearing the Court will set by a separate order.

So ORDERED this 19th day of September, 2013.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT

cc:    All counsel of record
       Plaintiff, *pro se*